**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:CR-06-173-1** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **RODNEY HUTCHINSON,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendant Rodney Hutchinson's motion to suppress drug evidence that law enforcement officers seized from a rental car during the course of a traffic stop. For the reasons that follow, Defendant's motion will be denied.

### I.     PROCEDURAL HISTORY

On May 1, 2006, Rodney Hutchinson was taken into custody after law enforcement officers discovered more than 200 pounds of packaged marijuana in a rental vehicle he was driving after he was pulled over in Riverside, California, for committing a violation of the California Motor Vehicle Code.   On May 3, 2006, a grand jury sitting in the Middle District of Pennsylvania returned a one-count indictment charging Defendant and others with conspiring to manufacture, distribute, and possess with the intent to distribute approximately 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846.  (Doc. No. 8.)  Following a Rule 40 hearing held in California, Defendant was returned to the Middle District of Pennsylvania.  On May 16, 2006, Defendant entered a plea of not guilty to the charge.  On May 17, 2006, Magistrate Judge J. Andrew Smyser entered an order granting the government's motion to detain Defendant pursuant to 18 U.S.C. § 3142(e) and (f).  On May 26, 2006, Defendant filed the motion to suppress that is the subject of this memorandum.

On May 31, 2006, the grand jury returned a superseding indictment naming additional

defendants and adding two counts with respect to Defendant Hutchinson, charging him with

conspiring to conduct a transaction or transactions with property that was the proceeds of the

distribution of controlled substances, in violation of 18 U.S.C. §§ 1956(h) and 2 (Count II), and

seeking criminal forfeiture pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853 of any property

constituting, or derived from, proceeds obtained as a result of the crimes charged in Counts I and

II, and any property used in any manner to facilitate the commission of such crimes (Count X).

(Doc. No. 59.)  On June 20, 2006, Defendant pleaded not guilty to Counts I, II, and X of the

superseding indictment.

Defendant moved to suppress the drug evidence seized from his rental vehicle during a

traffic stop on May 1, 2006.  The government filed a brief in opposition to Defendant's motion to

suppress on June 8, 2006.  The Court held an evidentiary hearing on the motion on August 15,

2006.

## I.    INTRODUCTION[1]

Gilbert Carrera is a field and canine officer with the California Highway Patrol who has

been employed with the California Highway Patrol for approximately 18 years.  In addition to his

duties as a field officer, Officer Carrera is a member of the Patrol's Special Enforcement Unit,

and in connection with these duties he has received significant training and education relating to

narcotics trafficking and drug interdiction and has been certified as a drug recognition expert by

---

[1]  The following factual information is derived from evidence and testimony presented
during the evidentiary hearing held August 15, 2006.  Although certain testimony was
conflicting, the factual background provided herein represents evidence and testimony the Court
has credited following consideration of all the evidence presented.

the Patrol.

On the afternoon of May 1, 2006, Officer Carrera received a call from Officer Mendenhall, a fellow patrolman who was working as a task force officer with the Drug Enforcement Agency.  (Tr. 13-14.)  Officer Mendenhall advised Officer Carrera that the task force was investigating two vehicles that were entering California from Arizona suspected of transporting large quantities of marijuana, and he requested Officer Carrera's assistance.  (Id. 14.)  Officer Carrera drove his marked vehicle to the intersection of Heacock and the 60 Freeway in Riverside, California, with instructions to look for a particular van that was suspected to be involved in drug trafficking.  (Id. 14-15.)  Shortly thereafter, Officer Mendenhall advised Officer Carrera that his target vehicle had changed to a Pontiac Grand Am.  (Id. 15.)

Officer Carrera waited at a restaurant at his appointed location for between 40 minutes and one hour until he received another call from Officer Mendenhall advising him that the target vehicle was en route in his direction and requesting that Officer Carrera "follow it and find a reason to stop it."  (Id. 16-17.)  After he began following the Grand Am, Officer Carrera observed that the driver of the vehicle failed to signal while making an abrupt right turn onto a residential street.  (Id. 17.)  Officer Carrera testified that turning without signal in this manner constitutes a violation of the California Vehicle Code as an "unsafe turning movement."  (Id.)  Officer Carrera testified that he turned on his vehicle's red light to signal Defendant to pull his car to the side of the road.  (Id. 18.)  Defendant did not stop but instead continued forward at a speed of between 10 and 15 miles per hour, eventually making a left-hand turn on another residential street. (Id. 19.)  Officer Carrera activated his alternating high beams and siren in an effort to encourage the Grand Am to pull over immediately.  (Id.)  The Grand Am continued

traveling past another street, eventually coming to a stop approximately three feet from the curb. (Id.)

Officer Carrera approached the driver's side of the Grand Am, advised Defendant as to why he had been pulled over, and requested Defendant's driver's license, registration, and proof of insurance.[2] (Id. 20.) Instead of complying with Officer Carrera's instructions, Defendant stuck both of his hands out of the vehicle's window, a move that Officer Carrera found confusing. (Id.) Following Officer Carrera's repeated request for his registration, Defendant advised him that the vehicle was a rental car and produced the rental contract. (Id. 21.) Throughout this exchange, Officer Carrera observed that Defendant's hands were shaking. (Id.)

As a result of Defendant's failure to yield and because the Grand Am was situated several feet away from the curb, which Officer Carrera interpreted to be an indication that Defendant might have been preparing to flee, Officer Carrera instructed Defendant to exit the vehicle. (Id. 21-22.) Officer Carrera testified that he observed marijuana debris or residue on the front seat of the Grand Am as Plaintiff got out of the car. (Tr. 23.) Officer Carrera and Defendant moved to the right front of the patrol car; however, Defendant stopped twice on the way to the vehicle, which gave Officer Carrera some concern about a "fight or flight" scenario developing. (Id. 22, 23.) At this point, Officer Pendleton had arrived on the scene to provide backup. (Id. 22.)

When they had arrived at his patrol cruiser, Officer Carrera engaged Defendant in

---

[2] Defendant testified that Officer Carrera did not advise him as to the reason for pulling him over until after he had been placed under arrest and that Officer Carrera initially informed Defendant that he pulled him over for a seatbelt violation before changing the reason to failure to signal. (Tr. 51-52.) It appeared that Defendant was also attempting to suggest that Officer Carrera then checked the turn signal and found a mechanical problem. (Id. 53.) The Court does not credit this testimony and instead credits Officer Carrera's testimony regarding the reason he stopped Defendant and the manner in which this was communicated to Defendant.

conversation regarding such matters as where he had come from, where he was going, and who had rented the Grand Am.  (Id. 24.)  According to Officer Carrera, Defendant responded with a story that was "very, very questionable."  (Id.)  For example, Defendant informed Officer Carrera that he lived in Pennsylvania, had taken a bus to Arizona, and while there had received a phone call from a female friend named Katie Gartland, who happened to be in Arizona at the same time. (Id. 24-25.)  According to Officer Carrera, Defendant told him that he had needed to visit a friend in Riverside, California, but for unknown reasons could not rent a car, so Ms. Gartland rented a vehicle for him.  (Id. 25.)  Defendant claimed that he went to a hotel where Ms. Gartland was staying and picked up a rental vehicle for his drive to California.  (Id.)  Once he had arrived in California, Defendant claims he went to an establishment off of the 60 Freeway and was there for approximately one hour before the friend he was allegedly going to visit called him on his cell phone and told him where he lived.  (Id.)  Despite claiming to have received this call, Defendant was unable to provide Officer Carrera with the address his friend had allegedly given him, and was further unable to provide Officer Carrera with the name of this friend.  (Id.)

Having been advised by a task force officer that Defendant's vehicle contained a substantial quantity of marijuana, having observed a small amount of substance he believed to be marijuana debris on the front seat after effecting a traffic stop, and having been told what he considered a very dubious story regarding the circumstances by which Defendant claimed to have arrived in Riverside, California, Officer Carrera retrieved his drug-detecting canine, Zeus, to conduct a sniff of the Grand Am.  (Id. 26.)  According to Officer Carrera, Zeus proceeded around the vehicle, eventually "follow[ing] the odor of the narcotics into – in through the open window,

went straight into the back seat and alerted on a duffle bag that was in the back seat."[3]  (Tr. 26.)

Officer Carrera returned Zeus to the cruiser and asked Defendant whether he owned the duffel

bag in the back seat, to which he replied that it was not his and he did not know who owned the

bag.[4]  (Id. 26-27.)

Officer Carrera proceeded to open the duffel bag, discovering four bricks of packaged

marijuana.  (Id. 27.)  Thereafter, Officer Carrera placed Defendant under arrest and searched the

remainder of the vehicle.  (Id.)  This search yielded two additional duffel bags located in the

trunk of the car, collectively containing sixteen packages of marijuana with an aggregate weight

of more than 200 pounds.  (Id.)  Upon discovering the marijuana, Officer Carrera called the local

task force to take over the investigation.  (Id.)

## III.    DISCUSSION

Defendant argues that the drug evidence seized from the rental car must be suppressed

because Officer Carrera lacked probable cause to pull him over, because the traffic stop was

---

[3]  Upon cross examination, Officer Carrera clarified that Zeus entered the Grand Am through the open driver's-side window.  (Tr. 32.)  For his part, Defendant testified that he could not see how Zeus made entry into the vehicle, (id. 50-51), and Defendant has not challenged Officer Carrera's testimony that Zeus entered the car on his own volition and without active assistance from Officer Carrera.

[4]  Upon questioning by his counsel, Defendant offered the following version: "I say, [the bag is] in my care, I don't know what's in there. . . . I got it through the car, the bag with the car from Katie."  (Tr. 48.)  Defendant testified that it was his belief that he was in custody of the bags, though he had no idea who owned the bags, and that he did not know what the bags contained.  (Id. 49.)  As with much of his testimony, the Court found Defendant's story to be highly dubious and lacking in credibility.  By his testimony, it appeared that Defendant was attempting to suggest that he was the bailee of the bags, in order to contest the government's suggestion that the bags could be searched as abandoned property.  The Court does not find that the lawfulness of Officer Carrera's search turns on the quality or nature of Defendant's claimed interest in the bags.

allegedly a pretextual attempt to search the car, and because Officer Carrera searched the car without probable cause or consent in violation of the Fourth Amendment.  As discussed below, the Court finds that when Officer Carrera stopped the Grand Am he had probable cause to believe that a violation of the California Motor Vehicle Code had been committed, and that Officer Carrera's subjective motivation for attempting to find a basis to stop the car is irrelevant. Furthermore, the Court finds that Officer Carrera had probable cause to search Defendant's vehicle after his drug-detecting canine alerted positively to the presence of contraband inside the car.  Accordingly, Defendant's claim – which was not supported by the evidence – that Officer Carrera searched the car without consent is irrelevant.

"An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Although the reasonable suspicion requirement is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," it nonetheless requires an officer to articulate an "objective justification for making the stop." Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).  Specifically, in the context of motor vehicle stops, courts have held that a stop is lawful where the officer has reasonable suspicion that either the motorist or the vehicle are in violation of the law. United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006).

In this case, Officer Carrera testified that he observed the Grand Am Defendant was operating make an abrupt turn without signaling, which constitutes a violation of section 22107

of the California Motor Vehicle Code.[5]  Having observed Defendant commit this traffic violation, Officer Carrera was justified in stopping the Grand Am.  See Whren v. United States, 517 U.S. 806, 810 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"); Delaware v. Prouse, 440 U.S. 648, 663 (1979) (holding that traffic stops are justified under the Fourth Amendment where the officer has a reasonable suspicion that either the motorist or the vehicle are in violation of the law); United States v. Moorefield, 111 F.3d 10, 12 (3d Cir. 1997) ("It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."); United States v. Kikumura, 918 F.2d 1084, 1092 (3d Cir. 1990) (traffic stop reasonable where officer observed defendant violating traffic code).

As the Court has credited Officer Carrera's testimony that he observed Defendant commit a traffic code violation, the Court must reject Defendant's initial argument that Officer Carrera was without legal justification for stopping Defendant's vehicle.  To the extent Defendant is arguing that the stop was unlawful because it was pretextual in that it was motivated by Officer Carrera's suspicion that Defendant's vehicle contained contraband and that he was looking for a way to justify a traffic stop, the Supreme Court's decision in Whren forecloses this argument.

---

[5]  Section 22107 of the California Motor Vehicle Code provides as follows:

> No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement.

Cal. Veh. Code § 22107.

See Whren, 517 U.S. at 810 (where police have reason to believe traffic violation has occurred, their actual motives in conducting a traffic stop are irrelevant).  Additionally, given Hutchinson's failure to stop immediately, his election to park several feet from the curb, his suspicious behavior during the stop, and his failure to comply promptly with Officer Carrera'a instructions, Officer Carrera was justified in ordering him out of the car, see Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), and conducting a safety pat-down.  See Terry, 392 U.S. at 30.

Defendant argues that the search was also unlawful, in part, because Officer Carrera allegedly asked for permission to search the vehicle and proceeded to do so unlawfully after Defendant declined to consent to a search; however, the evidence does not support this version of events.  For example, although Defendant's counsel asked Defendant whether he gave consent to search the Grand Am, to which Defendant answered in the negative, (Tr. 50), neither Officer Carrera nor Defendant testified that any law enforcement officer attempted to obtain consent to search the car.  To the contrary, Officer Carrera testified that he did not ask Defendant for consent to search the Grand Am.  (Id. 36-37.)  The Court finds that Defendant was not asked for consent to search the vehicle, and thus Defendant's challenge to the lawfulness of the search on the grounds that the search was non-consensual is misplaced.

Defendant also contends that the search of the vehicle violated his right under the Fourth Amendment to be free from unreasonable searches and seizures because Officer Carrera searched the Grand Am without probable cause.  In contrast, Officer Carrera contends that he had probable cause to search the car after he observed a small amount of marijuana debris in the cracks of the Grand Am's front seats and, in any event, after his drug-detecting canine, Zeus, alerted positively to a duffel bag located on the back seat of the car that was subsequently searched and found to

9

contain packaged marijuana.  The Court will address separately these offered bases of probable cause.

Officer Carrera first asserted that he had probable cause to search the car because he had observed marijuana debris on the front seat.  (Tr. 33.)  Although the Court found Officer Carrera's testimony during the suppression hearing to be almost entirely credible, the Court found the testimony and evidence regarding the existence of marijuana debris or residue on the front seat to be particularly limited and, in certain respects, uncorroborated by other evidence. Officer Carrera testified at length regarding his considerable training and experience regarding narcotics, including "numerous classes specifically [focused on] marijuana" that caused him to become "very familiar with the way [marijuana] looks, the way it smells, how it's packaged, how it's hidden, how it's utilized, ingested, things of that nature."  (Id. 31-32.)

Yet, when questioned by Defendant's counsel regarding his observation of the alleged marijuana debris, Officer Carrera asserted that he was "not getting that technical" in describing the loose marijuana as "debris" or "residue," clarifying that was he was describing as "seeds, maybe a little – a twig of marijuana, maybe a little bit of crushed leaf.  Now, call it residue or call it debris, that's the same thing to me."  (Id. 35.)  In addition to this generality regarding an observation he contends gave him probable cause to conduct a full-scale search of Defendant's automobile, Officer Carrera could neither recall whether he had, in fact, observed seeds on the front seat of the car, nor whether he observed marijuana stems.  (Id. 35-36.)  Officer Carrera did testify that he observed "crushed leaves" and, on redirect, he testified that there was "quite a bit of residue."  (Id. 36, 41.)  However, Officer Carrera's qualification that the amount of debris he observed was insufficient for personal consumption gave the Court pause as to what Officer

10

Carrera actually observed.  (Id. 41.)

Officer Carrera testified that although he photographed the front interior of the vehicle consistent with his typical practice, the photograph did not confirm the presence of marijuana residue or debris in the cracks of the front seat.  (Id. 39.)  Additionally, Officer Carrera could not testify whether it was confirmed that the debris or residue in the front of the car was taken from the vehicle or tested to determine whether it was, in fact, marijuana.  (Id. 34-35.)  Finally, Officer Carrera confirmed that even though his drug-detecting canine entered the vehicle via the driver's-side window into the front of the vehicle before moving to the back seat, he did not alert to the presence of narcotics anywhere on the front seat of the Grand Am (id. 33), although Officer Carrera attempted to explain this by opining that Zeus bypassed the marijuana that was allegedly littering the cracks of the front seat because of the substantial quantity of narcotics stashed in the back of the vehicle attracted him to that location, (id. 41-42).

Weighing the foregoing testimony regarding Officer Carrera's observation of the interior front of Defendant's rental vehicle against the fact that the photographic evidence of the vehicle does not corroborate the testimony, together with the fact that Zeus did not recognize marijuana on the front seat and that none of the debris or residue was seized or tested to determine that it was actually contraband, the Court has difficulty adjudicating the motion to suppress solely on Officer Carrera's testimony that he observed a quantity of marijuana in the cracks of the front seat of the Grand Am that was, by his own admission, insufficient in quantity to be suitable for personal use but was sufficiently obvious so as to provide him probable cause to search the entire

car.[6]  Additionally, the Court notes that the United States presented no evidence other than Officer Carrera's own testimony to support its contentions as to probable cause.  As noted, the Court found Officer Carrera's testimony to be almost entirely credible and the Court has, accordingly, credited substantially all of Officer Carrera's testimony.  Nevertheless, after weighing Officer Carrera's testimony regarding his brief observation of the front seat against the fact that the photograph of the vehicle's interior does not confirm the presence of loose marijuana, the fact that Officer Carrera admittedly did not detect the smell of any marijuana emanating from the vehicle, the fact that Officer Carrera had no idea whether the debris he observed was later tested and confirmed to be marijuana, and the fact that Zeus did not alert to the presence of marijuana in the front of the vehicle, the Court will decline to uphold Officer Carrera's search of the vehicle exclusively on the basis of Officer Carrera's testimony that he observed marijuana debris.  However, the Court finds it unnecessary to restrict its decision to this portion of the testimony because, for the reasons discussed at length below, the Court concludes that Officer Carrera developed sufficient probable cause during the course of the traffic stop to allow him to search the vehicle lawfully.

Because Officer Carrera did not proceed to conduct a full-blown search of the vehicle based solely on his observation of debris on the front seat, but instead elected to retrieve his drug-detecting canine to conduct a sniff of the vehicle's exterior, the Court will proceed instead to evaluate whether the canine sniff conducted by Officer Carrera and his drug-detecting dog,

---

[6]  As noted, notwithstanding his testimony that he was following a vehicle suspected to be transporting a large amount of narcotics, and notwithstanding his claim that he observed loose marijuana debris in the front seat of the car that he contends gave him probable cause to search the entire vehicle, Officer Carrera elected not to search the vehicle and instead retrieve his canine to perform a sniff of the Grand Am.

Zeus, constituted a search conducted in violation of the Fourth Amendment. Upon consideration, the Court concludes that it was not and that the dog sniff that Officer Carrera employed was lawful. Moreover, the Court finds that the canine's alert to what he perceived to be contraband provided Officer Carrera with the probable cause necessary to allow him to lawfully search the Grand Am for narcotics. Nevertheless, because the dog sniff that was conducted in this case presents some unusual considerations, the Court finds it appropriate to provide some discussion below.[7]

In <u>United States v. Place</u>, 462 U.S. 696 (1983), the Supreme Court held that a canine sniff of luggage at an airport did not constitute a search for purposes of the Fourth Amendment because a dog sniff "discloses only the presence or absence of narcotics, a contraband item," without requiring the opening of the suitcase. <u>Id.</u> at 707. Because of the Court's finding that such sniffs revealed extremely limited information – namely, the presence or absence of contraband – the Court found that dog sniffs of bags in public places should be regarded as sui generis and not searches under the Fourth Amendment. <u>Id.</u>

In <u>Indianapolis v. Edmond</u>, 531 U.S. 32 (2000), the Supreme Court extended the rationale of <u>Place</u> to dog sniffs conducted in the context of traffic stops in concluding that "[t]he fact that officers walk a narcotics-detection dog around the exterior of each car at the Indianapolis checkpoint does not transform the seizure into a search." <u>Id.</u> at 40. In support of this finding, the Court twice noted that such a sniff of a vehicle's exterior is substantially less invasive than a

---

[7] Defendant has not specifically challenged the lawfulness of the canine sniff that was conducted by Officer Carrera and Zeus. However, he has contended that Officer Carrera effected a search of the automobile without probable cause to do so. Accordingly, the Court finds it necessary to evaluate whether the canine sniff actually constituted a search within the meaning of the Fourth Amendment.

typical search:

> Just as in <u>Place</u>, an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics.  Like the dog sniff in <u>Place</u>, a sniff by a dog that simply walks around a car is much less intrusive than a typical search.

<u>Id.</u> (citations omitted).

Recently, the Supreme Court, relying in part on the reasoning of <u>Place</u> and <u>Edmond</u>, held that "the use of a well-trained narcotics-detection dog – one that 'does not expose noncontraband items that would otherwise remain hidden from public view – during a lawful traffic stop, generally does not implicate legitimate privacy interests."  <u>Illinois v. Caballes</u>, 543 U.S. 405, 409 (2005).  The Court explained further:

> In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement. . . . A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.

<u>Id.</u> at 409-10.

Although Defendant has not specifically challenged the lawfulness of the canine sniff at issue in this case, the Court was initially troubled by Officer Carrera's testimony that Zeus did not so much conduct an exterior sniff of the Grand Am, but instead apparently entered into the

car via an open window prior to alerting to the duffel bag on the back seat.[8]  Because Edmond

and Caballes appear to be limited to declaring that external canine sniffs may be conducted

during traffic stops even absent reasonable suspicion that the vehicle contains contraband, it is

not clear that these decisions would support a dog sniff that moves from the exterior of an

automobile to the interior of the car.  Specifically, this Court questioned whether a lawful

exterior sniff can be transformed into an unlawful search where the canine enters the vehicle of

its own accord and where the evidence does not indicate that the canine alerted or otherwise

signaled definitively while outside to indicate that the vehicle contained contraband.  Neither the

Supreme Court nor the United States Court of Appeals for the Third Circuit has addressed this

question, and the Court has found only a handful of decisions from other circuits or district

courts that have confronted the issue.[9]  Although the Court has not identified any binding

---

[8]  Officer Carrera testified that Zeus "followed the odor of narcotics" into the car, but he offered no testimony as to how he knew what drew Zeus into the car; instead, the Court is presumably left to infer that Zeus entered the car due to the smell of the narcotics that he ultimately discovered in the back seat.  The Court appreciates the fact that Officer Carrera testified that Zeus is a trained narcotics-detection dog who had been working with Officer Carrera in the field for approximately one and one-half years.  Notwithstanding Officer Carrera's familiarity with Zeus and his behavior, Officer Carrera never testified that Zeus alerted outside of the Grand Am.  Nevertheless, as will be discussed further, the evidence established that Zeus alerted to a bag within the vehicle that contained a substantial quantity of marijuana, and this fact would support a finding that Zeus was drawn into the vehicle by the drugs' smell.

[9]  Neither Defendant nor the Government briefed this issue, and in fact neither party has discussed the lawfulness of dog sniffs under the Fourth Amendment.  Again, Defendant has argued that his vehicle was subjected to an unlawful search and the Court therefore finds it to be both relevant and necessary for the Court to examine whether the canine sniff of the vehicle can be construed as a search under the Fourth Amendment as a result of the location in which the critical part of the dog sniff took place – namely, the interior of the vehicle.  The Court's finding is augmented by an assertion made by defense counsel during closing arguments when he contended that "[t]he entry of the dog into the car . . . is a reason for suppression, because as your Honor can see from the photograph of the automobile, there really wasn't anything on that seat that you could identify as marijuana debris."  (Tr. 58.)

authority on the point, the consensus among the courts that have addressed this question appears

to be that a canine sniff that migrates from outside a car or other container to the interior does not

constitute a violation of the Fourth Amendment, provided that the canine makes entry into the

suspect vehicle of its own initiative and is neither encouraged into nor placed in the vehicle by a

law enforcement officer.

The earliest decision that the Court has identified that specifically addresses the question

of whether a non-consensual dog sniff that takes place inside a lawfully seized vehicle constitutes

a search for Fourth Amendment purposes is United States v. Stone, 866 F.2d 359 (10th Cir.

1989).  In Stone, police stopped a vehicle for speeding along Interstate 40 in New Mexico.  Id. at

360.  During the course of the traffic stop, one of the officers asked the driver of the vehicle to

show him the ticket or traffic citation he claimed to have received earlier in the day.  Id. at 361.

In accordance with this request, the driver exited the vehicle and opened the car's hatchback to

retrieve the ticket.  Id.  During the course of the traffic stop, other police officers arrived at the

scene and engaged the driver and his passenger in conversation.  Id.  Shortly thereafter, another

officer arrived with a drug-detecting canine.  Id.  The dog proceeded to circle the car with its

handler, showed some interest underneath the rear area of the vehicle and ultimately jumped

through the open hatchback where he alerted on a duffel bag.  Id.  The police subsequently

searched the vehicle and the duffel bag, which was found to contain methaqualone tablets.  Id.

In denying the defendant's motion to suppress, the district court concluded, inter alia, that

the dog's leap into the car "did not vitiate the seizure, regardless of whether or not it was a

search."  Id. at 362.  In reaching this conclusion, the district court found that the defendant had

voluntarily opened the hatchback and the dog "came along and on his own, apparently jumped

into the back of the car and immediately found what is sought to be suppressed here." Id. (internal quotation marks omitted).

On appeal, the Tenth Circuit relied on Place to conclude that "police may employ a narcotics dog to sniff an automobile which they have stopped upon reasonable suspicion to believe it contains narcotics.  Under these circumstances, police use of a narcotics dog is not a search requiring a search warrant or probable cause." Id. at 363.  Nevertheless, the Tenth Circuit found the fact that the dog entered the car to potentially changed this analysis:

> Even though the police could use a trained dog to sniff the exterior of Stone's automobile, the dog created a troubling issue under the Fourth Amendment when it entered the hatchback.  People have a reasonable expectation of privacy in the interiors of their automobiles; police may not search an automobile unless they have probable cause to believe it contains contraband.

Id.  Nevertheless, and notwithstanding the fact that the appellate court concluded that when the canine entered the car the police had only reasonable suspicion that the vehicle contained narcotics, the Tenth Circuit upheld the lawfulness of the interior sniff of the vehicle:

> We agree with the district judge that the dog's instinctive actions did not violate the Fourth Amendment.  There is no evidence, nor does Stone contend, that the police asked Stone to open the hatchback so the dog could jump in.  Nor is there any evidence the police handler encouraged the dog to jump in the car. . . . In these circumstances, we think the police remained within the range of activities they may permissibly engage in when they have reasonable suspicion to believe an automobile contains narcotics.

Id. at 364.  The Tenth Circuit did not provide any legal authority for its conclusion that a dog sniff that took place within a vehicle does not violate the Fourth Amendment if the dog's entry is found to be voluntary; likewise, the court cited no authority for the tacit proposition that a dog sniff would be rendered unlawful if the dog were placed in the vehicle or its entry facilitated by

17

law enforcement officers.

The reasoning of <u>Stone</u> was followed in <u>United States v. Watson</u>, 783 F. Supp. 258 (E.D. Va. 1992), where the district court denied a defendant's motion to suppress narcotics discovered in his open vehicle while it was parked in a valet-parking location of a hotel with the driver's-side door open.  In that case, a canine officer kept the vehicle under observation while other officers were searching of defendant's hotel room and, ultimately, in placing the defendant under arrest following the discovery of narcotics within the hotel room.  Following the arrest, a police officer came downstairs to coordinate with the canine officer and, while there, asked the officer to "do a search of the car."  <u>Id.</u> at 262.  At this point, "[t]he drug-sniffing dog proceeded to climb into the car where he 'started biting on the passenger seat, indicating that he hit on some type of narcotic smell, either on that seat or underneath it.'"  <u>Id.</u>  Thereafter, an officer "popped the trunk lever located next to the driver's seat" and the dog jumped in the trunk of the car, where he bit on a plastic foam food container.  <u>Id.</u>  The officer proceeded to open the container and discovered approximately $16,000 in bundled cash.  <u>Id.</u>

Noting that it was clear that the officers were entitled to use the dog to conduct an exterior sniff of the vehicle, the court found that "[t]he next question . . . is whether by jumping in the open passenger door, the dog caused what is supposed to be a very limited encounter to escalate into a violation of the Fourth Amendment."  <u>Id.</u> at 265.  Relying exclusively on <u>Stone</u>, the district court concluded that the search was lawful because the court had been presented "with no evidence that the dog was encouraged to jump in the car by its handler."  <u>Id.</u>  Finding that the dog's act of alerting to the passenger seat provided probable cause to believe the automobile contained narcotics, the court upheld the subsequent search of the foam container in

the trunk and the seizure of the cash located therein.  Id.

_____The reasoning of Stone has been applied in similar and analogous contexts in other cases involving canine sniffs that became relatively more invasive as the sniff progressed.  See, e.g., United States v. Reed, 141 F.3d 644, 650 (6th Cir. 1998) (upholding a canine sniff of the interior of an apartment that revealed crack cocaine where the police and canine were in the apartment lawfully to look for a suspected intruder, where dog may have moved dresser drawers in the course of the sniff, thereby exposing the contraband contained in the drawers to plain view; the court found that the dog's "instinctive actions" in moving the dresser drawers did not render the sniff constitutionally infirm); United States v. Lyons, 957 F.2d 615, 616-17 (8th Cir. 1992) (upholding the seizure of narcotics discovered in defendant's bag after drug-detecting canine alerted to, and immediately tore into, the bag in the course of a sniff; relying on Stone and rejecting defendant's argument that the dog's independent act of tearing into the bag tainted the sniff and subsequent seizure); United States v. Lyons, No. 05-3099, 2006 U.S. Dist. LEXIS 14454, *11-21 (D. Neb. Feb. 15, 2006) (upholding a dog sniff where the dog's nose penetrated the vehicle's open window, even where officer directed dog to sniff window area, finding that the dog detected the odor of drugs while outside the vehicle and the act of sticking its head inside the car was not directed by the handler but was "initiated by the dog himself"); United States v. Lewis, No. 05-69, 2005 U.S. Dist. LEXIS 38142, *25-26 (W.D. Mich. Dec. 27, 2005) (after questioning sua sponte whether a dog's entry into a vehicle tainted the validity of a dog sniff, the court concluded that a dog's sniff of vehicle's interior was lawful because the evidence established that the driver's side window was down when the sniff commenced and, apparently, because the court found dog's entry into the vehicle was prompted by the odor of the narcotics

that were contained therein rather than the actions of its handler); see also United States v. Liberto, 660 F. Supp. 889, 891 (D.D.C. 1987) (predating Stone) (where narcotics dog sniffing in a public passageway outside the defendant's train compartment lunged into his open roomette and sniffed in the direction of a suitcase located on a rack above the floor, held that the lunge was not a search under the Fourth Amendment, relying on Place). But cf. United States v. Winningham, 140 F.3d 1328, 1331 (10th Cir. 1998) (suppressing contraband discovered in a van following a canine sniff of the interior where officers lacked any reasonable suspicion that the van contained narcotics and where officers opened the van's door, allowed the open van to sit on the side of the road while they waited for a canine unit to arrive, and where the dog's handler unleashed the dog as it neared the open door; distinguishing Stone because the evidence demonstrated that the officer endeavored to facilitate a sniff of the van's interior).

As the foregoing demonstrates, the majority of federal courts that have confronted questions similar to that presented in this case have concluded that canine sniffs of the interior of a vehicle or other container are lawful, but suggest that such interior sniffs may become constitutionally infirm in the event that the interior sniff is accomplished or facilitated by the officer-handler. As noted, the Tenth Circuit provided no obvious legal support for its conclusion that a sniff that takes place within a vehicle should not be considered a search if it is found to occur as a result of a canine's instinctive actions, but presumably could become a search when facilitated by the officer who, for example, opens the door of the vehicle to allow the dog access to the interior of the cabin but while the officer otherwise remains outside the vehicle. The Court finds this distinction to be legally sound, however, for the reasons explained below.

It is well established that the so-called "plain view" doctrine authorizes the seizure of

illegal or evidentiary items visible to a police officer whose access to the object has some prior

Fourth Amendment justification and who has probable cause to suspect that the item is connected

with criminal activity.  Illinois v. Andreas, 463 U.S. 765, 771-72 (1983).  In addition to justifying

the seizure of incriminating evidence discovered in plain view, the Supreme Court has noted that

"[t]he information obtained as a result of observation of an object in plain sight may be the basis

for probable cause or reasonable suspicion of illegal activity."  Texas v. Brown, 460 U.S. 730,

739 n.4 (1983).

Courts have recognized the "plain smell" doctrine as a logical extension of, and

analogous to, the plain view doctrine.  See, e.g., United States v. Angelos, 433 F.3d 738, 748

(10th Cir. 2006) ("The plain smell doctrine . . . is simply a logical extension of the 'plain view'

doctrine") (internal quotation marks omitted); see also Horton v. Goose Creek Independent

School Dist., 690 F.2d 470, 477 (5th Cir. 1982) ("The courts have in effect adopted a doctrine of

'public smell' analogous to the exclusion from fourth amendment coverage of things exposed to

the public 'view.' . . . The courts have reasoned that if a police officer, positioned in a place

where he has a right to be, is conscious of an odor, say, of marijuana, no search has occurred; the

aroma emanating from the property or person is considered exposed to the public 'view' and,

therefore, unprotected."). Like plain view, "plain smell" can provide probable cause to justify a

search where an officer smells a substance that is immediately apparent to him to be the odor of

contraband.  United States v. Rhiger, 315 F.3d 1283, 1290 (10th Cir. 2003) (concluding that

various factors, including agents' detection of strong odor of cooking methamphetamine justified

warrantless search); United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000) (finding that

officer executing arrest warrant "quickly developed probable cause for a search based on his

immediate perception of an odor associated with methamphetamine production"); <u>United States</u> <u>v. Lueck</u>, 678 F.2d 895, 903 (11th Cir. 1982) (contents of packages could be inferred where, <u>inter</u> <u>alia</u>, the "packages reeked of marijuana"); <u>United States v. Haley</u>, 669 F.2d 201, 203 (4th Cir. 1982) (holding that the odor given off by a container could justify invocation of the plain view doctrine).

Furthermore, Courts have held that a canine sniff that detects the odor of narcotics or other contraband should be considered to come within the plain smell/plain view doctrine.  <u>See</u>, <u>e.g.</u>, <u>United States v. Roby</u>, 122 F.3d 1120, 1124-25 (8th Cir. 1997) ("The fact that the dog, as odor detector, is more skilled than a human, does not render the dog's sniff illegal."); <u>Horton</u>, 690 F.2d at 477 ("the courts have concluded that the sniffing of a dog is 'no different [from an officer smelling an odor],' or that the dog's olfactory sense merely 'enhances' that of the police officer in the same way that a flashlight enhances the officer's sight.") (footnotes and citations omitted); <u>see also</u> <u>United States v. Reed</u>, 141 F.3d 644, 649 (6th Cir. 1998) ("Just as the sniffing of contraband by trained canines does not constitute an unlawful search, neither does the viewing by humans of contraband in plain sight amount to an unlawful search.  As long as the observing person or the sniffing canine are legally present at their vantage when their respective senses are aroused by obviously incriminating evidence, a search within the meaning of the Fourth Amendment has not occurred.").

Notably, the Supreme Court has held that where an officer who is lawfully present at particular location moves or manipulates an object seen in plain view, and where the officer has no probable cause to search the item, the act of moving or manipulating the object constitutes an unreasonable search under the Fourth Amendment that is not subject to the plain view doctrine.

See Arizona v. Hicks, 480 U.S. 321, 325-26 (1987) ("taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry. . . . We now hold that probable cause is required [to search the item]. To say otherwise would be to cut the 'plain view' doctrine loose from its theoretical and practical moorings.").

The rule announced in Hicks suggests that in the context of the plain smell doctrine, including canine sniffs, it would be unlawful for officers to open or otherwise manipulate containers in order to determine whether odors of contraband might thereby be more easily detected. Applying Hicks in this way would logically lead courts to apply the distinction announced in Stone where the Tenth Circuit concluded that a canine's independent act of entering the vehicle would be lawful where the canine was attracted into the vehicle by the smell of contraband, but would be considered an unlawful search, absent probable cause, if the officer put the dog in the car, opened the car to enhance the dog's ability to smell odors otherwise trapped in the vehicle, or otherwise facilitated the dog's entry before the dog had detected the presence of contraband. Where an officer opens a vehicle or other container to assist a canine in detecting the presence of contraband, and where the canine has not already positively alerted or indicated that it has detected the scent of contraband within the container, it seems logical to conclude that the "plain smell" doctrine should have no application, since the positive sniff that results was presumably aided or achieved impermissibly by the officer's manipulation of the container. In contrast, where a canine makes entry of its own accord due to its independent reaction to an odor emanating from the car, the plain sniff rule would apply because the dog was

23

not aided in its sniff by an intervening officer and the dog detected the odor in an area in which it was lawfully present.  For these reasons, and for the reasoning set forth by other courts that have considered the issue, the Court finds that the rule and distinction announced and applied in <u>Stone</u> is sound and should be applicable to the facts of this case.

Whether there may be other instances where a dog sniff should properly be considered a search under the Fourth Amendment is a difficult question that this Court need not attempt to answer given the record in this case because the Court ultimately concludes that Zeus made entry into the Grand Am after smelling the odor of marijuana – an odor he first detected outside the vehicle before he entered through the driver's window.[10]  Additionally, nothing in the record suggests Officer Carrera placed Zeus in the Grand Am to assist his sniff, and the record would not support a finding that Officer Carrera actively encouraged Zeus to enter the car.  On the facts of record, the Court finds that the rule announced in <u>Stone</u> should apply, and the dog sniff at issue, although having taken place both inside and outside the Grand Am, should not be considered a search under the Fourth Amendment.

Having concluded that the dog sniff of the Grand Am was not a search, the Court has little difficulty disposing of Defendant's claim that the search that followed Zeus's positive alert on the duffel bag in the back seat should be suppressed for lack of probable cause.  A positive

---

[10]  In addition to crediting Officer Carrera's in-court testimony that Zeus's entry into the car was prompted by his detecting the odor of marijuana, the Court's finding is also supported by Officer Carrera's written narrative regarding the traffic stop, which reflects his observation that "Zeus's behavior changed as he approached the driver's side window. . . . Zeus followed the odor of drugs into the back seat areas where he alerted to a large black duffel bag."  (Doc. No. 269, Attachment.)  Furthermore, the Court finds the fact that Zeus entered the car and almost immediately alerted to the duffel bag supports a finding that Zeus was attracted inside the vehicle by the scent of marijuana located in the bag.

alert to the presence of narcotics by a well-trained drug-detecting canine provides probable cause to justify a search.  Karnes v. Skrutski, 62 F.3d 485, 498 (3d Cir. 1995); United States v. Massac, 867 F.2d 174, 176 (3d Cir. 1989); see also Florida v. Royer, 460 U.S. 491, 506 (1983) ("a negative result [from a drug sniff] would have freed Royer in short order; a positive result would have resulted in his justifiable arrest based on probable cause"); United States v. Glover, 957 F.2d 1004, 1013 (2d Cir. 1992) ("once the narcotics dog 'hit on' Glover's bags, the police had probable cause to obtain a search warrant").  Furthermore, under the so-called automobile exception to the Fourth Amendment's warrant requirement, Officer Carrera was justified in searching the Grand Am without first obtaining a warrant because he had probable cause to believe the vehicle contained drugs on the basis of Zeus's alert.  See United States v. Burton, 288 F.3d 91, 100-01 (3d Cir. 2002) (citing Chambers v. Maroney, 399 U.S. 42, 52 (1970) (warrant not required to search an automobile where officers have probable cause to believe it contains contraband or evidence of criminal activity)).

In sum, Officer Carrera lawfully stopped Defendant's vehicle after he observed Defendant commit a violation of the California Motor Vehicle Code, and Officer Carrera's subjective motivation in attempting to effect the traffic stop is irrelevant.  Although he claims he observed a small amount of marijuana debris on the front seat, Officer Carrera did not immediately proceed to search the vehicle on the basis of this observation alone.  Instead, he retrieved his drug-detecting canine to conduct an external sniff of the vehicle, something that he is lawfully entitled to do even in the absence of the reasonable suspicion he had developed throughout the course of the traffic stop.  Although Officer Carrera's canine entered the interior of the vehicle, it did so on its own initiative after becoming attracted by the odor of narcotics emanating from the car, and

no evidence suggests that Officer Carrera assisted, facilitated, or otherwise encouraged Zeus's

entry into the car's interior.  When Zeus alerted on the duffel bag in the back seat, thereby

indicating that the bag contained contraband, Officer Carrera was armed with the probable cause

necessary to conduct a search of the car and any containers located therein.  Accordingly,

Defendant's motion to suppress the evidence yielded from this lawful search – approximately

220 pounds of packaged marijuana – will be denied.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:CR-06-173-1** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **RODNEY HUTCHINSON,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

   **AND NOW**, this 17th day of January 2007, upon due consideration, and for the reasons

fully set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendant's

motion to suppress (Doc. No. 46) is **DENIED**.


                                        S/ Yvette Kane
_____       Yvette Kane, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania